**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-2129-WJM-NRN

SUEZ WTS SERVICES USA, INC.,

    Plaintiff,

v.

AETHON UNITED BR LP,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S MOTION TO STAY ARBITRATION**

---

This declaratory judgment action is before the Court on Plaintiff Suez WTS Services USA Inc.'s Motion to Stay Arbitration (the "Motion"). (ECF No. 8.) Defendant Aethon United BR LP responded in opposition (ECF No. 17), and Plaintiff replied (ECF No. 19). For the reasons explained below, the Court denies the Motion.

### I. BACKGROUND AND PROCEDURAL HISTORY[1]

**A.    Parties' Business Relationship[2]**

In October 2011, Plaintiff and Encana, a non-party, executed a Master Services Agreement ("MSA"), which governed Plaintiff's treatment of water used in Encana's oil and gas production operations and the use of necessary equipment to treat the water in the Neptune Water Treatment Plant (the "Plant") in Wyoming. (ECF No. 1 ¶ 6; ECF No.

---

[1] The following factual summary is drawn from Plaintiff's Complaint for Declaratory Relief ("Complaint") (ECF No. 1), except where otherwise stated.

[2] The Court understands that at various points during the relevant time period, both Plaintiff and Defendant were known by different names. However, for the sake of ease, the Court refers to the parties by their current names or as Plaintiff and Defendant.

17 at 7.)  Encana later purchased the Plant from Plaintiff.  (ECF No. 1 ¶¶ 6, 10.)  The MSA contains an arbitration clause that provides:

> In the event of a dispute concerning this Agreement, the complaining party shall notify the other party in writing thereof.  Management level representatives of both parties shall meet at an agreed location to attempt to resolve the dispute in good faith.  Should the dispute not be resolved within thirty (30) days after such notice, the complaining party shall seek remedies exclusively through arbitration.  The seat of arbitration shall be the federal district court in Denver, CO, and the rules of the arbitration will be the Commercial Arbitration Rules of the American Arbitration Association, which are incorporated by reference into this clause.

(ECF No. 8-1 at 9 § 26.)

Under the MSA, neither party may assign its rights or duties without the prior consent of the other party.  (ECF No. 1 ¶ 7.)  The assignment clause provides:

> <u>Assignments and Subcontractors</u>.  Neither party may assign or subcontract its rights or duties under this Agreement, except to an Affiliate, without the prior consent of the other party, which consent shall not be unreasonably withheld, except that subcontracts by Contractor for services valued at less than five hundred dollars shall not require Encana approval. An assignment, delegation or subcontract in violation of this Section 19 shall be void. Consent to assign given by a party shall not relieve the other party of responsibility for performance of its obligations under this Agreement.

(*Id.* ¶ 8; ECF No. 8-1 at 8 § 19.)  Colorado law governs the MSA.  (ECF No. 8-1 at 8 § 22.)

In November 2014, Plaintiff and Encana entered into an Operations and Maintenance Agreement ("OMA"), which governed Plaintiff's operation and

maintenance of the Plant.[3]  (ECF No. 1 ¶ 11.)

In March 2015, Defendant and Encana executed a Purchase and Sale Agreement, through which Defendant purchased the Plant from Encana.  (*Id.* ¶ 15.)  Plaintiff alleges that although Defendant claims Encana assigned the MSA to Defendant in the sale, "[a]t no time did [Plaintiff] consent to an assignment of the MSA to [Defendant]," and "[Defendant] never sought to obtain [Plaintiff's] consent to an assignment of the MSA."  (*Id.* ¶¶ 25–26.)

**B.   Arbitration**

Following years of business relations concerning the Plant, on January 28, 2020, Defendant filed a demand for arbitration with the American Arbitration Association ("AAA") against Plaintiff.  (ECF No. 17-12.)  In the demand, Defendant states that Plaintiff "committed breach of contract and various torts in connection with the design, construction and operation of [Defendant's] Neptune Water Treatment System located in Fremont County, Wyoming."  (*Id.* at 2.)  Defendant claims between $1 million and $10 million in damages, attorney's fees, interest, arbitration costs, and punitive/exemplary damages.  (*Id.*)

Plaintiff alleges that "[t]he sole basis for [Defendant's] assertion that it is entitled to initiate the arbitration is the purported assignment of the MSA, which contains an

---

[3] The OMA contains various provisions regarding superseding the MSA as of the First Use of the Plant.  Plaintiff explains these provisions at length in the Complaint and the Motion (ECF Nos. 1, 8), the substance of which the Court will not detail here because it is unnecessary to resolve the Motion.
   The Court also notes that in June 2017, Defendant and Plaintiff entered into a new OMA which, like the original OMA, governed Plaintiff's ongoing operation and maintenance of the Plant.  (ECF No. 17 at 11.)

arbitration provision." (*Id.* ¶ 34.) Accordingly, in response to Defendant's demand for arbitration, on February 19, 2020, Plaintiff submitted the following statement:

> SUEZ objects to AAA's jurisdiction of this matter. Aethon United BR LP ("Aethon") has commenced this arbitration purportedly pursuant to the Master Services Agreement (MSA) by and between GE Mobile Water, Inc. and Encana Oil & Gas (USA) Inc. that it attached to its Arbitration Statement. However, Aethon has no rights against SUEZ under the MSA because, among other reasons, the MSA contains a "no assignment" provision that specifically states that it (and any rights or obligations under it) cannot be assigned without SUEZ' [*sic*] express consent. *See* MSA ¶ 19. No such consent was ever given. Accordingly, Aethon lacks the right or authority to commence this arbitration and, therefore, the AAA lacks jurisdiction, right or authority to arbitrate this matter.

(ECF No. 8-10; ECF No. 1 ¶ 35.)

In the initial stage of the arbitration, Plaintiff "sought and obtained leave to address as a preliminary matter whether the arbitration tribunal had jurisdiction over it." (ECF No. 17-16 at 2.) Accordingly, on May 22, 2020, Plaintiff filed the Respondent's Motion to Dismiss ("Motion to Dismiss"), which requested that the arbitration be dismissed for lack of jurisdiction. (ECF No. 17-14.) Plaintiff argued that the MSA was not assigned to Defendant in accordance with the requirements of the MSA, rendering any assignment void. (*See id.* at 3.) Therefore, Plaintiff asserted that because Defendant is not an assignee/party to the MSA, it lacks the legal capacity to invoke the MSA arbitration clause to contractually require Plaintiff to arbitrate disputes concerning the MSA. (*See id.* at 4.) Alternatively, Plaintiff contended that the OMA superseded and extinguished the MSA; because the OMA has no arbitration clause, if the MSA was superseded by the OMA, no arbitration agreement between the parties would exist to

4

establish jurisdiction for the arbitration.  (*See id.* at 3.)  On June 12, 2020, Defendant responded in opposition.  (ECF No. 17-15.)

On June 25, 2020, the arbitrator issued an Order Denying Suez's Motion to Dismiss Without Prejudice.  (ECF No. 17-16.)  Relying on the fact that the arbitration clause in the MSA provides that the arbitration will be conducted under the Commercial Rules of the AAA, the arbitrator found that "[u]nder Rule 7(a) of the current Commercial Rules, the arbitrator has the power to rule on his or her own jurisdiction with respect to the existence, scope, or validity of the arbitration agreement." (*Id.* at 3.)  The arbitrator concluded that he was "legally empowered to determine [his] jurisdiction of [Defendant's] claims raised under the arbitration clause of the MSA."  (*Id.* at 4.)

In ruling on the Motion to Dismiss, the arbitrator found that determining whether the MSA was assigned to Defendant is "a mixed question of law and fact."  (*Id.*) "Interpreting the requirements of the assignment clause is a legal determination based on the applicable provisions of the MSA and Colorado law.  Whether or not the requirements of the assignment clause were met or waived by Suez is a factual determination." (*Id.*)  The arbitrator analyzed in detail the parties' arguments and found that

> there are material factual disputes as to whether the Suez [*sic*] consented to assignment of the MSA to Aethon which preclude dismissal at this preliminary stage of the arbitration. I also find that there are material factual disputes as to whether Suez's conduct effected a waiver of its right under the MSA to consent to the assignment of the MSA by Encana to Aethon for the same reasons.

(*Id.* at 6.)  Given the factual disputes regarding the validity of the assignment of the MSA, the arbitrator denied the Motion to Dismiss without prejudice.  (*Id.* at 7.)  The

arbitrator also denied without prejudice Plaintiff's alternative basis for the Motion to Dismiss—that the OMA extinguished the MSA. (*Id.*)

The arbitrator observed that under Rule 7(c) of the Commercial Rules, "a ruling on a party's objection to jurisdiction may be made as a preliminary matter or as part of the final award. This rule recognizes that a determination of jurisdiction may be entwined with factual issues, which is the case here." (*Id.* at 4.) Accordingly, the arbitrator reiterated that his ruling was without prejudice and that Plaintiff could raise the issues in the Motion to Dismiss at the evidentiary hearing, at which time the arbitrator could "resolve the disputed issues of fact and make a legal determination of whether Aethon is an assignee/party to the MSA and thus legally able to invoke the arbitration clause in the MSA to compel Suez to arbitrate."[4] (*Id.* at 7.) In the end, the arbitrator scheduled a preliminary evidentiary hearing for March 22, 2021. (ECF No. 17-17.)

## C.  Declaratory Judgment Action

On July 20, 2020, almost a month after the arbitrator denied Plaintiff's Motion to Dismiss, Plaintiff filed a declaratory judgment action under this Court's diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1 ¶ 4.) In the Complaint, Plaintiff brings a claim for declaratory relief, requesting that the Court declare that

> 46. Pursuant to the plain language of the MSA, the Court should declare that Aethon did not receive a valid assignment of the MSA because Suez did not provide prior consent or was even asked to provide prior consent.

---

[4] Although the arbitrator did not ultimately decide whether Defendant's claims are arbitrable, he found he had jurisdiction to do so. (ECF No. 17-16 at 4.) Thus, to the extent necessary to adjudicate the Motion, the Court finds that in the order denying the Motion to Dismiss, the arbitrator determined that he had the authority to arbitrate the question of arbitrability.

6

> 47. The Court should declare that Aethon did not receive an assignment of the MSA because the MSA was a "required consent" that did not transfer to Aethon under the P&S Agreement because consent was not obtained.

(*Id.* ¶¶ 46–47.)  Plaintiff also brings a claim for injunctive relief, alleging that forcing it to arbitrate Defendant's claims where no agreement to arbitrate exists would cause irreparable harm.  (*Id.* ¶ 52.)

On August 14, 2020, almost a month after filing the Complaint, Plaintiff filed the Motion.  (ECF No. 8).  Although styled as a "Motion to Stay Arbitration," at its core, the Motion is a request for a preliminary injunction enjoining the arbitration.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy.  *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1117 (10th Cir. 2010).  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Tenth Circuit previously endorsed an alternate standard that relaxed the likelihood of success requirement when the other three factors tipped strongly in the movant's favor.  *See, e.g.*, *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).  The Tenth Circuit abrogated this standard in 2016, announcing that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).

Although the Tenth Circuit has abrogated its relaxed standards, the Tenth Circuit continues to endorse a heightened standard for "[d]isfavored preliminary injunctions," which do not

> merely preserve the parties' relative positions pending trial. Instead, a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win. To get a disfavored injunction, the moving party faces a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor.

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019) (citations and internal quotation marks omitted).

### III. ANALYSIS

Before the Court analyzes whether the Motion meets the requirements for a preliminary injunction, it must first address Defendant's argument that Plaintiff waived its right to contest arbitrability in federal court when it submitted the issue of arbitrability to the arbitrator. (ECF No. 17 at 14–18.)

**A.     Plaintiff Waived Judicial Determination of Arbitrability**

Defendant argues that Plaintiff "clearly and unmistakably consented to have the arbitrator decide arbitrability." (*Id.* at 15.) As an initial matter, Defendant argues that Plaintiff agreed to have the arbitrator decide the arbitrability question in the MSA by incorporating the AAA Rules by reference. (*Id.* at 16; *see* ECF No. 8-1 at 9 § 26 ("the rules of the arbitration will be the Commercial Arbitration Rules of the [AAA], which are incorporated by reference into this clause").) Consistent with the MSA's delegation of the threshold question of arbitrability to the arbitrator, Plaintiff voluntarily moved to

8

dismiss the arbitration before the arbitrator by contesting the validity of the assignment of the MSA. (ECF No. 17 at 16; ECF No. 17-14.)

Further, Defendant highlights that the Motion to Dismiss raised the same arguments before the arbitrator that are before this Court in the Motion, namely whether the assignment of the MSA to Defendant was valid. (ECF No. 17 at 16.) Importantly, Defendant notes that the Motion to Dismiss "did not challenge the arbitrator's authority to decide jurisdiction." (*Id.*) Instead, Plaintiff invoked the arbitrator's authority to rule on his own jurisdiction by citing the AAA rules in the Legal Standard section of the Motion to Dismiss.[5] (ECF No. 17-14 at 8 ("[U]nder Rule 7 of the AAA Commercial Arbitration Rules . . ., the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'").)

In its reply, Plaintiff contends that it has never agreed to arbitrate Defendant's claims and has consistently maintained that Defendant has no authority to compel arbitration. (ECF No. 19 at 2 ("there is no colorable argument that Suez has ever agreed to arbitrate Aethon's claims under the MSA").) For support, Plaintiff references its response to Defendant's demand for arbitration, which informed Defendant that it would not arbitrate absent a determination of whether Defendant is even a party to the MSA. (*Id.*) Plaintiff disputes the premise of Defendant's jurisdiction argument by

---

[5] Although Defendant does not point this out, the Court also notes that in the Motion to Dismiss, Plaintiff again invokes the arbitrator's authority to determine arbitrability. Plaintiff cited Colorado's Uniform Arbitration Act for the proposition that "'an arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable.'" (ECF No. 17-14 at 8 (citing C.R.S. § 13-22-206(3)).)

emphasizing that Defendant's position is based on the incorrect assumption that the MSA is a binding and enforceable contract between the parties. (*Id.*)  Plaintiff concedes that in the arbitration, "[a]t most, the parties agreed to resolve the question of whether Aethon was assigned rights under the MSA <u>before</u> arbitrating Aethon's claims." (*Id.* (emphasis in original).)  But Plaintiff argues that the arbitrator declined to rule on whether Defendant can assert its claims, and now Defendant is attempting to compel arbitration despite having no agreement to arbitrate. (*Id.* at 2–3.)  Accordingly, Plaintiff asks the Court—not the arbitrator—to determine whether Defendant has rights under the MSA. (*Id.* at 3.)

"[A]rbitration is a matter of contract," and the court cannot require a party "to submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation omitted).  "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original).  The parties may agree to arbitrate arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  And, when the parties so agree, "they delegate to an arbitrator all threshold questions concerning arbitrability," including "whether the parties are bound by a given arbitration clause." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (citations omitted).

"[Q]uestions of arbitrability encompass two types of disputes: (1) disputes about 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement,' . . . and (2) 'threshold disputes about who should have the primary power to decide' whether a dispute is arbitrable." Id. (quoting First Options, 514 U.S. at 942, 944–45) (emphasis in original). When addressing the first type of dispute, any doubts about the scope of arbitrable issues should be resolved in favor of arbitration. Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)). When addressing the second type of dispute, i.e., whether parties have agreed that arbitrators rather than the court should decide arbitrability, courts "should not assume the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Id. (quoting First Options, 514 U.S. at 944) (additional citations omitted).

A party does not preserve its objection to the arbitrability of an issue unless an objection is timely made in the arbitration proceeding. See Kalmar Indus. USA LLC v. Int'l Bhd. of Teamsters Local 838, 452 F. Supp. 2d 1154, 1160 (D. Kan. 2006) (citation omitted). "In other words, a party that agrees to submit the question of arbitrability to the arbitrator waives any right to object later to that arbitrator's authority." Id. By submitting and arguing the issue on the merits without either objecting to the arbitrator's authority or expressly reserving the jurisdiction objection, the party waives its right to seek judicial review of the jurisdiction objection. Id. "If a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter." Id.

11

(quoting *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000)).  Conversely, if "a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court." *Id.*

Agreement to arbitrate may be implied from the parties' conduct.  *See Valley Decking Co. v. Local Union No. 9 of Sheet Metal Workers Int'l Ass'n*, 841 F. Supp. 354, 357 (D. Colo. 1994); *Vic Wertz Distrib. Co. v. Teamsters Local 1038, Nat'l Conference of Brewery & Soft Drink Workers of the United States of Am. & Canada*, 898 F.2d 1136, 1140 (6th Cir. 1990) (parties' agreement to have the arbitrator decide the issue of arbitrability may be implied from the conduct of the parties in the arbitration setting); *see also Local 36 Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Whitney*, 670 F.3d 865, 869 (8th Cir. 2012) (same); *George Day Constr. Co., Inc. v. United Bhd. of Carpenters & Joiners of Am., Local 354*, 722 F.2d 1471, 1475 (9th Cir. 1984) (same).  In *Newmont U.S.A. Ltd. v. Insurance Company of North America*, the Tenth Circuit noted that "the fact that the parties made arguments before the arbitration panel concerning Article XIII and the post-judgment interest issue further supports our conclusion the arbitration panel was authorized to address the issue."  615 F.3d 1268, 1276 n.7 (10th Cir. 2010) (citing *Carpenter Local No. 1027, Mill Cabinet–Indus. Div. v. Lee Lumber and Bldg. Material Corp.*, 2 F.3d 796, 799 (7th Cir. 1993) ("[T]he agreement to arbitrate a particular issue may be implied from the parties' conduct, including their actual litigation of that issue.")).

"Upon such a finding of clear and unmistakable evidence, the court 'must allow an arbitrator to decide issues of arbitrability in the first instance'; there is no provision for the use of discretion." *Gidding v. Fitz*, 2018 WL 480607, at *6 (D. Colo. Jan. 19, 2018), *report and recommendation adopted*, 2018 WL 11000688 (D. Colo. Feb. 27, 2018), *aff'd*, 752 F. App'x 656 (10th Cir. 2018) (citation omitted).

Here, the Court finds that, although Plaintiff initially objected to the arbitrator's jurisdiction to arbitrate Defendant's claims in its response to the demand for arbitration, Plaintiff subsequently waived its right to object to arbitration by filing the Motion to Dismiss, thereby participating in the arbitration. In the Motion to Dismiss, Plaintiff did not contest the authority of the arbitrator to decide the merits of the Motion to Dismiss or object to the arbitrator's jurisdiction over the Motion to Dismiss. (*See* ECF No. 17-14.) Instead, Plaintiff specifically invoked Rule 7 of the AAA Commercial Rules to confirm the authority of the arbitrator to rule on his own jurisdiction and to decide the Motion to Dismiss. (*Id.* at 8.)

Other than generally noting that it has never consented to arbitrate and pointing to the response to the demand for arbitration, in the reply, Plaintiff does not cite any document in which it expressly reserved the question of arbitrability for the Court, all the while filing its Motion to Dismiss on a merits issue—the validity of the assignment of the MSA to Defendant. (ECF No. 19 at 2–3); *see The Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 813–14 (6th Cir. 2006) (party waived issue of who had power to decide arbitrability by submitting the matter to arbitration "without reservation"); *George Day*, 772 F.2d at 1475 ("Nowhere in the record is there any

13

indication that the employer reserved the question of arbitrability for initial determination in a judicial forum."). Thus, to the extent that Plaintiff initially objected to the arbitration in February 2020 in its response to the demand for arbitration, by the time Plaintiff filed its Motion to Dismiss in May 2020, Plaintiff had shifted gears, and it is evident that it was no longer objecting to the authority of the arbitrator to determine arbitrability.

Defendants argue that by filing its Motion to Dismiss, Plaintiff "affirmatively chose to ask" the arbitrator to dismiss the claims for lack of jurisdiction, thereby allowing the arbitrator to decide arbitrability. (ECF No. 17 at 18.) In essence, by asking the arbitrator to determine the validity of the assignment of the MSA to Defendant, the Motion to Dismiss asks the arbitrator to arbitrate arbitrability. As Plaintiff underscores in the Complaint, a determination of the validity of the assignment *is* the dispositive determination of whether Defendant can invoke the arbitration clause at all. (*See* ECF No. 1 ¶¶ 42–43 ("There exists uncertainty between the parties as to whether Aethon has any rights under the MSA, including whether Aethon may compel arbitration of alleged claims arising under the MSA. The Court's declaration of rights would settle the legal relations at issue.").) Thus, through its conduct in choosing to file the Motion to Dismiss in arbitration, Plaintiff has affirmatively invoked the arbitrator's authority to arbitrate arbitrability.[6] Therefore, the Court finds that Plaintiff's conduct in the arbitration

---

[6] The Court acknowledges that Plaintiff did not put the merits of Defendant's breach of contract claim before the arbitrator. However, Plaintiff submitted the potentially dispositive mixed legal and factual question of the validity of the assignment of the MSA to Defendant to the arbitrator, without objecting to the arbitrator's authority to resolve that question or reserving the issue of whether the arbitrator could arbitrate arbitrability for the Court. This is the same issue that Plaintiff now brings before the Court.

14

constitutes clear and unmistakable evidence that it intended to delegate the issue of arbitrability to the arbitrator.

The Court is mindful of the Supreme Court's finding that "merely arguing arbitrability to an arbitrator does not indicate a clear willingness to arbitrate that issue, *i.e.*, a willingness to be effectively bound by the arbitrator's decision on that point." *First Options*, 514 U.S. at 946.  However, unlike in *First Options*, in the Motion to Dismiss, Plaintiff did more than argue arbitrability to the arbitrator; as the arbitrator explains in depth in the order denying the Motion to Dismiss (ECF No. 17-16), Plaintiff argued the critical factual and legal questions regarding the validity of the assignment of the MSA to the arbitrator and explained the legal underpinnings of the arbitrator's authority to answer those questions.  *See Kalmar*, 452 F. Supp. 2d at 1162 (without reserving question of arbitrability for the court, company went beyond merely arbitrating arbitrability and submitted question of arbitrability to arbitrator for his determination as a "threshold issue" and stated in its brief that both the merits and the arbitrability issues were "before the Arbitrator").

Additionally, as Defendant emphasizes, it was only *after* the arbitrator denied the Motion to Dismiss that Plaintiff filed this lawsuit challenging arbitrability.  (ECF No. 17 at 17.)  This raises the entirely reasonably question of whether Plaintiff would have sought succor in this Court had its dismissal motion been *granted* by the arbitrator.  By waiting for the arbitrator's decision on its Motion to Dismiss before taking the step of filing an action in this Court, Plaintiff kept open its option to get the proverbial "second bite of the apple".  By so doing, Plaintiff skated perilously close to forum shopping and manipulating the procedural integrity of the court-arbitration adjudicative system.

Moreover, Plaintiff's ambivalence about being in federal court is manifested by the fact that it did not rush to this Court for relief at any point. To the contrary, Defendant made its arbitration demand on January 28, 2020. (ECF No. 17-12.) The arbitrator denied the Motion to Dismiss on June 25, 2020. (ECF No. 17-16.) It was not until July 20, 2020 that Plaintiff filed the Complaint. (ECF No. 1.) Plaintiff waited seven months after the demand for arbitration and nearly an entire month after the arbitrator denied the Motion to Dismiss to file this action. (ECF No. 1.) Moreover, Plaintiff waited nearly another month to file the Motion requesting preliminary injunctive relief. (ECF No. 8.)

The Court agrees with Defendant's characterization of Plaintiff's actions as the "classic case of a party who submits the issue of arbitrability to the arbitrator, dislikes the result, and then tries to relitigate the issues in federal court in hopes of a different result." (ECF No. 17 at 17.) *See Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007) ("[I]t is clear that our usual rules regarding waiver and estoppel apply to prevent a party from complaining about the enforceability of an arbitration agreement if he already has fully participated in arbitration without any relevant objection."). As posited earlier, had the arbitrator granted the Motion to Dismiss outright, it is highly unlikely Plaintiff would have contested his authority to do so. *See id.* at 1149 (citing *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) ("a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result")).

Accordingly, the Court finds that Plaintiff agreed to submit the issue of arbitrability to the arbitrator, and in doing so, waived judicial determination of the issue

of arbitrability.[7]  Insofar as the Motion requests preliminary injunctive relief in addition to a stay of the arbitration, the Court finds that, in light of its conclusion that Plaintiff has waived judicial determination of arbitrability, Plaintiff has failed to demonstrate a likelihood of success on the merits.[8]  Therefore, the Court denies the Motion.

**B.    Stay**

Given the foregoing findings, although neither party requested that this Court stay this proceeding, the Court must address whether a stay nonetheless is the most appropriate course of action.

"A court may enter a stay of proceedings incidental to its inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 100 F. Supp. 3d 1099, 1104 (D. Colo. 2015) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).  Courts in this District have frequently considered the following factors in determining whether a stay is appropriate: (1) the plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the

---

[7] The Court observes that this situation is akin to a defendant failing to raise a defense of lack of personal jurisdiction in a motion to dismiss that argues issues on the merits, resulting in waiver of the personal jurisdiction argument.  *See, e.g., Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1071 n.1 (D. Colo. 2012) ("Plaintiff also brings claims against Defendant Tatum under the Securities Exchange Act.  However, I will not engage in jurisdictional analysis with respect to Tatum, which did not challenge personal jurisdiction in its motion to dismiss and, thus, waived its right to do so.").

[8] In light of Plaintiff's waiver of judicial determination of arbitrability, the Court need not address Defendants' other arguments, including that the Motion is an impermissible *de facto* interlocutory appeal of the arbitrator's determination and that Plaintiff is not entitled to a preliminary injunction on the merits. (ECF No. 17 at 13–14, 18–26.)

17

interests of persons not parties to the civil litigation; and (5) the public interest.  *See id.* at 1104–05 (citation omitted).

With respect to the first three factors, it is most efficient for the parties and the Court to wait until the arbitrator determines at the March 2021 preliminary evidentiary hearing whether the assignment of the MSA to Defendant was valid before continuing with this action.  The outcome of the hearing will resolve key factual and legal issues in dispute, and in fact, appears to be outcome-determinative in this case in which the only claims are for declaratory relief regarding whether arbitration is appropriate and injunctive relief to enjoin the arbitration.  If the assignment was valid, the arbitration proceeds; if not, Defendant appears to lack a basis on which to invoke the MSA's arbitration clause, and the arbitration ceases.  The Court gives little weight to the fourth and fifth factors, as it does not appear as though any non-parties or the public have a significant interest in this action.  On balance, therefore, the Court concludes that a stay is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs's Motion to Stay Arbitration (ECF No. 8) is DENIED;
2. This action is STAYED; and
3. The Clerk shall ADMINISTRATIVELY CLOSE this case subject to reopening for good cause shown **after the conclusion of the arbitration**.

Dated this 19th day of October, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge